MILLS, Acting Chief Judge.
The Duval County School Board (Board) petitions for review of two orders of the Public Employees Relations Commission *32 (PERC). The order of 12 May 1977 affirmed the General Counsel’s dismissal of various unfair labor practice charges brought by the Board against the Duval Teachers United (DTU); the order of 30 June 1977 dismissed a complaint issued by the General Counsel based on some of the charges brought against the DTU. The cases were consolidated for review.
The charges brought by the Board against DTU alleged:
(1) That by walking out of bargaining sessions and refusing to meet on certain dates, DTU had failed to bargain in good faith;
(2) That by voting a “no contract-no work” policy, DTU had instigated or supported a strike in violation of § 447.-501(2)(e), Florida Statutes (1975);
(3) That DTU had printed and distributed leaflets which designated Superintendent of Schools Herb Sang as a criminal and had picketed the Superintendent’s private residence;
(4) That by publically announcing the formation of “strike teams”, DTU had violated § 447.501(2)(e), F.S. (1975);
(5) That DTU had distributed a leaflet designating the Board’s co-negotiator as a “union busting” attorney;
(6) That DTU had created a “Sack Sang” program, was encouraging members of the public to sign cards in support of it, and was distributing “crisis alert” sheets and propaganda leaflets supporting the movement.
The above charges were dismissed by the General Counsel and the dismissal approved by the Chairman and one commissioner; however, allegations in paragraphs (2) and (4) were incorporated into a complaint issued by the General Counsel which alleged a violation of § 447.501(2)(a). The complaint alleged that the DTU had interfered with, restrained and coerced public employees in the exercise of rights guaranteed in § 447.301(1) and (2) by the following acts:
“a. On or about June 7,1976, the Executive Board of the Respondent recommended to the general membership the adoption of a ‘no contraet-no work’ policy and said policy was adopted by a majority of the general membership of respondent on or about June 7, 1976.
“b. Commencing on or about June 7, 1976, and continuing thereafter until or about October 15, 1976, the Respondent began actual preparation for an illegal strike by organizing strike teams, compiling lists of individuals willing to carry picket signs and assist in a strike and publicizing to the general public that it intended to strike.
“c. Commencing on or about June 7, 1976, and continuing thereafter until on or about October 15, 1976, James Geiger (President of DTU), initiated, supported and participated in said prohibited activity described above. . . . ”
In its answer to the above complaint, DTU admitted the acts alleged but denied that such activity interfered with, restrained or coerced public employees in the exercise of rights guaranteed in § 447.301(1) and (2) Florida Statutes (1975). Thus, the only issue before the hearing officer and PERC was whether the above activities constituted a violation of § 447.501(2)(a). The Commission determined that a violation had not been proved and dismissed the complaint.
The Board contends that PERC erred in dismissing the charges it brought against the DTU and in dismissing the complaint issued by the General Counsel.
Among its charges, the Board alleged that by the voting of a “no contract-no work” policy and by the formation of “strike teams”, DTU had violated § 447.-501(2)(e), Florida Statutes (1975), which states that a public employee organization, its representatives and members, are prohibited from:
“(e) Participating in a strike against the public employer by instigating or supporting, in any positive manner, a strike.”
In its order dismissing the charge, PERC noted that under the definition of “strike” in § 447.203(6), Florida Statutes (1975), some sort of withholding of services by the employees was required. The Commission concluded that since no withholding of serv *33 ices occurred, there had been no violation of § 447.501(2)(e). We agree. Section 447.-501(2)(e) makes the act of participating in a strike an unfair labor practice. An organization or individual cannot participate in an activity that never occurs. However, it should be noted that the definition of “strike” was expanded by the legislature in 1977 to include “. . . any overt preparation, including, but not limited to, the establishment of strike funds with regard to the above-listed activities.” Section 447.-203(6), Florida Statutes (1977).
The Board also contends that DTU’s distribution of certain leaflets and flyers constituted an unfair labor practice. One of the flyers is a mock “wanted” poster with a picture of Superintendent Sang on it captioned “Wanted at the bargaining table by the teachers of Jacksonville”. The poster designates one of the Board’s negotiators as a “union-busting attorney”. Another flyer depicts Sang in a paper sack and is labeled “Sack Sang”. Other leaflets and cards urged the removal of Sang as superintendent, and called for a public expression of no-confidence in him. The Board asserts that the dismissal of these charges is inconsistent with the PERC order affirmed in Duval County School Board v. Florida PERC, 353 So.2d 1244 (Fla. 1st DCA 1978), finding the Board guilty of an unfair labor practice. We see no inconsistency. In that ease the Board was charged with failing to bargain in good faith. Substantial evidence was introduced to support the charge, including an interoffice memorandum written prior to the beginning of negotiations which suggested, among other things, that it would be good strategy to label the DTU’s chief negotiator as a “hired gun” or “outside hit man”. The memorandum, along with the Board’s total conduct, was considered in determining whether the intent of the Board was to avoid its obligation to bargain in good faith. The Board was not found guilty of an unlawful labor practice because it had expressed an opinion about the DTU’s chief negotiator.
In the instant case, the distribution of the literature in question is an activity protected by the First Amendment and Section 447.501(3), Florida Statutes, which states:
“Notwithstanding the provisions of subsections (1) and (2), the parties’ rights of free speech shall not be infringed, and the expression of any arguments or opinions shall not constitute, or be evidence of, an unfair employment practice or of any other violation of this part, if such expression contains no promise of benefits or threat of reprisal or force.”
Another charge that PERC dismissed alleged that the DTU was “. . . interfering with and attempting to coerce a managerial employee, Mr. Herb Sang, Superintendent . . ., as a result of his performing his duties and other activities in the interest of the Duval County School Board. . . . ” by picketing his private •residence. The General Counsel dismissed the charge on the grounds that:
“The investigation disclosed no probative evidence to indicate that the picketing of Superintendent Sang’s residence was accompanied by any verbal or written threats of violence directed at either Superintendent Sang or his family or to the performance of his managerial functions on behalf of the Charging Party but were rather manifestations of the rights of free speech and opinion guaranteed by the constitutions of the United States, State of Florida and by Section 447.501(3) of the Act.”
We do not believe that “threats of violence” are an essential ingredient of a Section 447.501(2)(a) violation. ' That Section prohibits “. . . interfering with, restraining, or coercing managerial employees . . .”, but does not indicate that such interference or coercion must be accompanied by threats of violence. Further, it is clear that not all picketing, even if peaceful, is protected by the Constitution as an expression of free speech. Picketing involves elements of both conduct and speech. It is something more than and different than simple communication. Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950).
*34 “While ‘the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution,’ Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 84 L.Ed. 1093 . patrolling is, of course, conduct, not speech, and therefore is not directly protected by the First Amendment.” NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760, 377 U.S. 58, 77, 84 S.Ct. 1063, 1073, 12 L.Ed. 129 (1964), (Black, J., concurring).
Numerous cases under the National Labor Relations Act have held that peaceful picketing, which has as its purpose the subjecting of secondary employers and employees to pressure forbidden under 29 U.S.C. § 158(b)(4), is an unfair labor practice and is not protected by the First Amendment. International Brotherhood of Electrical Workers v. NLRB, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). The picketing of a private residence presents a particularly unique situation because such conduct infringes on the occupants’ right to privacy. The well-worn phrase, a man’s home is his castle, has not lost its vitality. As was stated by Justice Black in Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (Black, J., concurring):
“Were the authority of government so trifling as to permit anyone with a complaint to have the vast power to do anything he pleased, wherever he pleased, and whenever he pleased, our customs and our habits of conduct would all be wiped out . . . . And perhaps worse than all other changes, homes, the sacred retreat to which families repair for their privacy and their daily way of living, would have their doors thrown open to all . . . . I believe that our Constitution did not create a government with such monumental weakness. Speech and press are, of course, to be free, so that public matters can be discussed with impunity. But picketing and demonstrating can be regulated like other conduct of men. I believe that the homes of men, sometimes the last citadel of the tired, the weary, and the sick, can be protected by government from noisy, marching, tramping, threatening picketers and demonstrators bent on filling the minds of men, women, and children with fears of the unknown.”
The General Counsel’s dismissal of the Board’s charge relating to picketing the Superintendent’s residence cannot be affirmed. The charge is reinstated, and the cause reversed and remanded for further proceedings on such charge. The question remanded to PERC is whether the picketing of the superintendent’s residence was, in the circumstances, unlawful interference, restraint, or coercion, though it was peaceful in the sense of nonviolent. To this factual issue the General Counsel’s order and the sustaining order of PERC did not speak, or they spoke erroneously on a question of law. Section 120.68(9). Because picketing is not pure speech expressing “arguments or opinions”, Section 447.501(3), picketing is not free of the restraints imposed by Section 447.501(1). Like other picketing for impermissible reasons, Hughes v. Superior Court, supra, picketing with the purpose or effect of interference, restraint, or coercion is not protected.
We affirm PERC’s dismissal of the complaint issued by the General Counsel. A hearing on the complaint was waived, and the stipulated facts were not sufficient to prove a violation of Section 447.501(2)(a).
Affirmed in part, reversed in part.
SMITH and ERVIN, JJ., concur.