BOOTH, Judge.
This cause is before us on appeal and cross-appeal from an order of the Public Employees Relations Commission (PERC) dismissing unfair labor practice charges brought by a public employee (Da Costa) against the Miami Association of Fire Fighters, Local 587, IAFF (Union). The charges filed with PERC stated the following basis:
Since April, 1981, John Da Costa, an employee of the City of Miami Fire Department, has been the object of threats, intimidation and harassment due to his desire to withdraw from the above Union and stop payments of dues to that Union. The Union: (1) circulated a so-called “hit list” of non-members to all station hous *1038 es, listing the seven out of 600 unit members who do not belong to the Union, with his name at the top of the list, so as to “make an example” of him and force him to “take his medicine”, and has posted these lists in all City of Miami station houses, where they remain to this day; (2) forced him to appear before the Union’s Executive Board before he could resign and cease paying dues; (3) made and continue to make prank phone calls to his home, disturbing and upsetting his wife and children, thoughout the day and night; (4) continues to bring his name up at Union meetings as a “scab”, whereupon the men in attendance threaten him with bodily harm; and, (5) causes him to receive threats, harassment, and insults on the job while engaged in non-union, work related duties. All of the above continues to this day, solely because John Da Costa wanted to quit the Union and thereby stop paying dues.
The Union responded with a simple denial of “the essential allegations of the charge” but admitted circulating a notice to its membership that Da Costa was not a member.[1] Hearing was had, and the hearing officer issued a recommended order in favor of the Union which the Commission adopted.
On appeal, the three issues to be addressed are:
I. Application of Section 447.503(6)(b), Florida Statutes, which provides:
If the commission determines that the alleged unfair labor practice occurred more than 6 months prior to the filing of the charge, the commission shall issue an order dismissing the ease.
II. The interpretation of Section 447.-301, Florida Statutes, which provides, in part:
(1) Public employees shall have the right to form, ... or to refrain from forming, joining, or participating in, any employee organization....
(2) ... Public employees shall have the right to refrain from exercising the right to be represented.
(3) Public employees shall have the right to engage in concerted activities not prohibited by law, for the purpose of collective bargaining or other mutual aid or protection. Public employees shall also have the right to refrain from engaging in such activities.
III.The interpretation with respect to the facts of this case of Section 447.501(2), Florida Statutes, which provides, in part as follows:
... A public employee organization or anyone acting in its behalf or its officers, representatives, agents, or members are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part ....
Appellant Da Costa is one of eight fire fighters in the City of Miami who is not a member of the 700-member Union, Fire Fighters Local 587, IAFF. The hearing officer found that Da Costa, a fire fighter and driver/engineer, joined the Union 18 years ago when he began his employment; that in December of 1980, Da Costa’s loans to the Fire Fighters’ Credit Union were discharged in bankruptcy, and that his payroll deductions for Union dues were stopped as a result of the bankruptcy order. Thereafter, the Union’s Executive Board, having attempted to persuade Da Costa to remain in the Union and pay back dues and having allowed him a certain time for payment of back dues without success, voted at the November 11 meeting to drop Da Costa’s membership. At the same meeting, the Executive Board decided to post in all the City firehouses lists of non *1039 union members, and to include Da Costa’s name on that list.
The posting of the lists and all pertinent events thereafter occurred within six months prior to the filing of an unfair labor charge by Da Costa. The Union meeting of October 9, 1980, and the Union Executive Board meetings of November 11, 1980 and December 11, 1980, at which statements, charges, and decisions were made which culminated in the posting of the list of non-members, occurred prior to the six-month period preceding the filing of the unfair labor charge.
The hearing officer ruled that events that occurred more than six months prior to the date the charge was filed would be dismissed, but that such events could be used “to shed light on the true character of matters within the limitations.” Despite that statement, however, the hearing officer explicitly refused to resolve factual disputes relative to various events outside the six-month period and did not consider such events as an indicia of improper conduct on the part of the Union.[2] In his order, the hearing officer rejected for “technical reasons, i.e. ... statute of limitations, agency, and free speech,” events which would otherwise indicate improper conduct on the part of the Union, as follows:
In sum, I find no evidence that the Union interferred with, restrained, or coerced DaCosta in the exercise of his rights, or that the Union caused or attempted to cause the City of Miami to discriminate against DaCosta or that the Union discriminated against DaCosta because he filed this charge. I am conscious of the fact that my conclusion is based in part upon a series of “technical” reasons, i.e. it is based upon statute of limitations, agency, and free speech grounds with which various events have been rejected as valid indi-cia of improper conduct on the part of the Union. I find it necessary, therefore, to state that I have also viewed the case from a wider perspective, yet I find the result to be the same.
The Union, not content with having 99.9% of the bargaining unit as members, zealously sought to retain DaCosta as a member and recruit those few other nonmembers. The Union’s proselytizing was vigorous I believe, but not illegal. DaCosta’s problems, however, may be attributable to more than his simply quitting the Union. The record also supports an inference that members are unhappy with the man for the effect that his bankruptcy had on the Credit Union. And beyond that, I believe some fire fighters resent DaCosta’s allowing the Union to “carry” him for nearly all of 1980 without paying Union dues, seeking the Union’s assistance during the disciplinary matter and then complaining about the quality of that assistance. The remedy for DaCosta may have to come, not from the filing of an unfair labor practice charge, but through “a certain toughening of the mental hide.” (emphasis added)
The Commission adopted the recommended order of the hearing officer and, with regard to the statute of limitations issue, ruled:
Having concluded that the evidence as a whole fails to show any threat or intimidation within the limitations period to Da Costa in retaliation for his withdrawing from membership in the Union or to regain his membership, we agree with the Hearing Officer that those events which occurred outside the statute of limitations for unfair labor practices are immaterial to the ultimate decision in this case, (emphasis added)
The Commission and the hearing officer erred in their interpretation of the *1040 six-month limitation period of Section 447.-503(6)(b) as applied to an unfair labor practice based on a continuing course of conduct. The employee has the burden to prove that an unfair labor practice occurred within six months of the filing of his complaint. However, he may, as in this case, seek to prove that charge by evidence of events occurring prior to the six-month period. The hearing officer must receive evidence of such events, as he did in this case, but further, he must fulfill his function of resolving conflict, determining credibility of witnesses, and evaluating evidence as it bears on the unfair labor practice charged to have occurred within the six-month period.[3]
In the instant case, the posting of the non-membership list, followed by the telephone calls to the employee’s home, verbal abuse of the employee coupled with threats, a fight with a former Union official, and other events occurring within the six-month period, should be interpreted against the background of the earlier occurrences for the purpose of determining whether the events within the statutory period constituted an unfair labor practice.
Basic to the rights guaranteed to employees to form, join, or assist labor organization is the right to engage in concerted activities to persuade other employees to join for their mutual aid and protection NLRB v. Drivers, Chauffeurs, Helpers, Local Union, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710 (1960). However, there are limits to that right. Both the Union and the employer are precluded, by virtue of Section 447.501(2), Florida Statutes, from activities infringing on the rights of individual employees. These rights include those incident to membership, and to non-membership, in a Union. The public interest in preserving the neutrality of institutions concerned with essential public services is clear[4] and precludes intimidation and harassment of public employees by either the employer or the union.
The Florida Legislature chose to go further than did Congress in protecting the rights of employees. The Florida Act defines unfair labor practices to include union activities “interfering with” employee rights, in addition to those activities restraining or coercing the exercise of employee rights, while the NLRA only proscribes those activities of a union which “restrain or coerce employees in the exercise of their rights.” [5] Both the federal *1041 and the Florida Acts protect expression, arguments, or opinions from being the basis for unfair labor charges, so long as they do not carry a threat of reprisal or force or promise of benefit. NLRA, Section 8, 29 United States Code, Section 158(c); Section 447.501(3), Florida Statutes. Neither Act protects all verbal conduct, however. Even under the NLRA, words which might seem harmless can be found to be coercive depending on the circumstances under which they are uttered.[6] The broader protection of the Florida statute proscribing activities which interfere with rights of public employees extends at least as far as the NLRA in protecting employees from such harassment.
The hearing officer and the Commission clearly take too narrow a view of the public employee’s rights and of what constitutes conduct interfering with those rights under Section 447.501(2). It matters not whether the harassment of the employee is for the purpose of collecting Union dues, punishing the employee for his discharge in bankruptcy of the loan made him by the largely Union-sponsored credit union, coercing renewal of membership in the Union, or a combination of these. If the “moving cause” of the actions against Da Costa was that employee’s membership or participation in, or lack of membership or participation in, the Union, Section 447.-501(2) applies. Lake City v. Public Employees Relation Commission, 353 So.2d 127, 129 (Fla. 1st DCA 1977).
The question to be determined is whether the events occurring within the six months prior to the filing of the charge were orchestrated by the Union and interfered with the employee’s rights. Conduct which might otherwise be protected activity loses that status when it invades the employee’s home. Duval County School Board v. PERC, 363 So.2d 30 (Fla. 1st DCA 1978) (peaceful picketing of employee’s residence not protected as free speech); United Mechanics Union, etc., 151 N.L.R.B. 386 (1965) (demonstration at non-strikers’ homes with demonstrators accusing non-strikers of “scabbing,” held not protected activity). The hearing officer found that Da Costa received late-night, annonymous telephone calls at his home after the Union posted the non-membership list, and that fire fighter White, referring to Da Costa’s discharge in bankruptcy of the loan from the Fire Fighters Credit Union, said, “In this crazy town there’s people that blow up people’s cars for less than that,” but held that the Union could not be held responsible unless the evidence showed that the Union “intended to confer the right upon the unknown callers and White [to do the acts charged] or endorsed or ratified these actions.” This test for union responsibility is too limited, in that it does not take into account the rule that intent can be inferred where the result is the reasonably foreseeable consequence of union conduct.[7]
*1042 Accordingly, the order below is reversed and the cause remanded for further proceedings consistent herewith, including the taking of further evidence, if any, as may be required.
MILLS and THOMPSON, JJ., concur.

. The Union’s answer did not meet the requirements of PERC Rule 38D-21.05(2); under PERC Rule 38D-21.05(4), the charges would have been deemed admitted at that point. We find it unnecessary to rule on this procedural issue in view of our disposition of the primary point on appeal. We also find it unnecessary to address the sequestration of witnesses issue raised by appellant. The Union’s cross-appeal of the denial of its claim for litigation expenses we find to be without merit.

. For instance, the hearing officer explicitly did not resolve the factual dispute between appellant and Gonzalez concerning whether Gonzalez, a Union officer, stated that appellant would have to "take his medicine.” Resolution of that issue, as well as consideration of other confrontations between appellant and the Board and/or its officers, may shed light upon the Union’s intent in posting the list of non-members and could result in a determination that the Union instigated, directed, approved or acquiesced in the acts of its members.

.Under federal law [also a six-month statute of limitations, NLRA § 10(b), 29 U.S.C. § 160(b) ], evidence of events outside the statutory period is admissible where "occurrences within the six-month limitation period in and of themselves may constitute, as a substantive matter, unfair labor practices." Local Lodge No. 1424, International Assoc. of Machinists v. NLRB, 362 U.S. 411, 416-417, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960); See, e.g., Shumate v. NLRB, 452 F.2d 717, 719 (4th Cir.1971) (suit against union for coercion held not barred by statute of limitation, and evidence that more than six months before filing the charge employees had crossed the picket line and union had fined and expelled them was admissible, because union threats to sue and filing of suits to collect fines against employees were within six-month period; evidence of prior events was “admissible to illuminate the character of the union’s more recent tactics"); International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. NLRB, 363 F.2d 702, 706 (DC Cir.1966):
When within the six-month period there has been active conduct, as contrasted with mere passive inaction following an old offense, it is open to the Board to refer to previous acts “to shed light on the true character of matters occurring within the limitations period.” 362 U.S. at 416, 80 S.Ct. at 826. In effect what was involved” here was a basic Company approach started more than six months prior to the charge, but carried forward by more recent actions.
NLRB v. Southern Plasma Corporation, 626 F.2d 1287 (5th Cir.1980), where employer closed his laboratory, allegedly to rid himself of unionizing employees prior to the six-month period, but reopened the laboratory within the statutory period, having hired new, non-union employees, the court held that the charge was timely filed and that evidence of the motive of the employer in closing and in reopening the plant, although derived from circumstances arising outside the six-month period, was admissible.

. North Brevard County Hospital District, Inc. v. PERC, 392 So.2d 556, 566 (Fla. 1st DCA 1980).

. The federal Act, NLRA Section 8(b)(1), 29 United States Code, Section 158(b), provides:
It shall be an unfair labor practice for a labor organization or its agents — (1) to restrain or *1041 coerce (A) employees in the exercise of the rights guaranteed in section 7 (29 U.S.C.S. § 157).... (emphasis added)
By comparison, Section 447.501(2)(a), Florida Statutes, provides:
(2) A public employee organization or anyone acting in its behalf or its officers, representatives, agents, or members are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.... (emphasis added)

. Corriveau & Routhier Cement Block, Inc. v. NLRB, 410 F.2d 347 (1st Cir.1969), where president of employer company in conversation with employee said "You must know who went union,” court held circumstances made those words coercive and not protected. The same opinion, reversing the Board, held that statements by a union sympathizer to a co-worker that he would "see him down the road” was a threat and not protected language, stating: "An employee's Section 7 rights are a shield against employer oppression, not a sword to intimidate fellow employees ...;” NLRB v. United Mine Workers of America, 195 F.2d 961, 962 (6th Cir.1952), cert. denied, 344 U.S. 920, 73 S.Ct. 387, 97 L.Ed. 709 (1953):
It is true that the calling of names under certain circumstances may not amount to coercion; but in the degree to which it was exhibited here it expressed overwhelming hostility.

. Radio Officers Union of the Commercial Telegraphers’ Union v. NLRB, 347 U.S. 17, 44-45, 74 *1042 S.Ct. 323, 338, 98 L.Ed. 455 (1954); NLRB v. General Drivers, Chauffers & Helpers, etc., 264 F.2d 21, 23 (10th Cir.1959): "It is sufficient if the result is the foreseeable consequence of Union conduct”; NLRB v. Local 140, United Furniture Workers of America, 233 F.2d 539, 541 (2d Cir.1956): "No evidence of specific intent is necessary, as these duly accredited representatives of the union must be presumed to have intended the natural and reasonable, foreseeable consequences of their acts”; Kerry Coal Co. v. United Mine Workers of America, 637 F.2d 957 (3d Cir.1981), cert. denied, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (where union argued it could not be held responsible in the absence of evidence that union "instigated, supported, ratified, or encouraged” the activities, the court responded that the fact finder could "infer” such instigation, etc., by union); Hull v. Sheet Metal Workers’ International Ass’n., 161 F.Supp. 161, 170-171 (ND Ohio 1958):
In determining whether the activities of the respondents restrain or coerce Burt’s employees, The Board has the right to take into account all the facts and circumstances in the case and to draw reasonable inferences therefrom. N.L.R.B. v. Link-Belt Co., 311 U.S. 584 [61 S.Ct. 358, 85 L.Ed. 368] [1940], ... Radio Officers’ Union of Commercial Telegrapher’s Union v. N.L.R.B., 347 U.S. 17 [74 S.Ct. 323, 98 L.Ed. 455] [1954]....
[[Image here]]
While Link-Belt and Ford involved unfair labor practice of an employer, it is submitted that there is no difference between coercion by an employer and coercion by a labor union. It may be just as effective when applied by either....
[[Image here]]
Proof of specific intent is unnecessary where the conduct of the respondents inherently restrains or coerces employees in the exercise of their rights. This is but an application of the common law rule that a man is held to intend the foreseeable consequences of his own act....