COPE, J.
(dissenting).
Respectfully, the Public Employee Relations Commission (“PERC”) and the majority opinion have applied incorrect legal standards to this case.
This is an appeal from orders which dismiss an unfair labor practice (“ULP”) charge which a teacher, Justin Koren, filed against the School District of Miami-Dade County. The theory of the dismissal is that Mr. Koren failed to state a cognizable claim. This is the labor law equivalent of an order dismissing a complaint. In reality the teacher’s filings do state a cognizable claim and PERC erred in entering the dismissal order.
I.
Mr. Koren was a teacher at Southwood Middle School, where he had taught since 2005. In February 2008 he assisted a security guard, Ms. Morris, in drafting a charge of harassment for sexual orientation against the School District and the school principal, Ms. Leal.
After Ms. Leal learned about Ms. Morris’ complaint, she became aware that Mr. Koren had been involved with the drafting of the complaint. She summoned Mr. Ko-ren to a meeting in her office. Mr. Koren was accompanied by a union representative. Principal Leal confronted Koren about the Morris complaint, insinuating that he was the author of the complaint. She questioned Koren about whether he believed that the contents of the Morris complaint were true, and if that was why his (Koren’s) behavior toward Ms. Leal had changed. PERC and Mr. Koren both agree that any action Mr. Koren took to assist Ms. Morris in drafting a harassment complaint qualifies as protected activity, and that it is impermissible to retaliate against an employee for engaging in protected activity.
In his ULP charge, Mr. Koren alleged that thereafter Ms. Leal took a series of retaliatory actions against him whereby he was subjected to two groundless disciplinary actions and was then transferred, without explanation, to a school which was twenty-four miles away. Those three employment actions — the two disciplinary actions and the transfer — are the basis of the ULP claim.
As a background fact, Mr. Koren alleges that he was elected as Rookie Teacher of the Year in the spring of 2008 by the school’s faculty and staff. The customary steps for recognition of this honor were not taken by Ms. Leal in Mr. Koren’s case.[4]
In August of 2008 school reconvened after the summer break. On September 8, 2008, Mr. Koren became ill and Ms. Leal signed a document approving a leave of absence. Notwithstanding the approval of this leave of absence, on September 16, 2008, Ms. Leal sent a letter to Mr. Koren accusing him of having abandoned his job and stating that he would be terminated if he failed to respond within three days. The School District’s Leave Office approved the leave of absence. There was no basis for the claim of abandonment and Ms. Leal did not pursue it.
On September 29, 2008, Ms. Leal sent Mr. Koren a certified letter advising him that a formal investigation had begun regarding whether he had violated a School District policy by giving his user name and password to a substitute teacher and paraprofessional in order to enter students’ grades into the grade book during his leave of absence. Mr. Koren denied the allegations, stating that he had left his *1095 password for the Department Chair while he was on his leave of absence. Mr. Koren has quoted the regulation in his ULP charge and the text of the regulation cited by him does not prohibit the action that he took. Mr. Koren alleges that no disciplinary action of this type has ever been initiated against any other School District teacher.
Mr. Koren filed his initial ULP charge against the School Board in February, 2009. The charge was filed with PERC. The General Counsel of PERC dismissed the charge with leave to amend.
In the meantime, Ms. Leal summoned Mr. Koren to her office and informed him that he was being transferred to another school twenty-four miles away. He alleges that he has been given no explanation for the transfer. Mr. Koren filed an amended charge alleging that the transfer was retaliatory, and filed another amendment. The General Counsel dismissed all of the charges. Mr. Koren appealed to PERC, which approved the dismissals. Mr. Koren has appealed the PERC dismissal orders.
II.
It is first necessary to outline the process for filing an ULP charge. Florida law prohibits the committing of unfair labor practices by a public employer or their agents or representatives. § 447.501(1), Fla. Stat. (2009).[5]
An employee (or an employer or employee organization) can file an ULP charge with PERC. Id. § 447.503; 34 Fla. Jur.2d Labor and Labor Relations § 179 (2010). The process is similar to filing a civil action in court, but there are some differences.
Under the statute, the complaining person’s charge “shall contain a clear and concise statement of facts constituting the alleged unfair labor practice, including the names of all individuals involved in the alleged unfair labor practice.... ” § 447.503(1), Fla. Stat. (2008). The complaining person must make “specific reference to the provisions of s. 447.501 [which defines unfair labor practices] alleged to have been violated,” id., and “any other information relevant to the charge.” Fla. Admin. Code R. 60CC-5.001(3)(e). The statute also requires that the ULP charge “must be accompanied by sworn statements and documentary evidence sufficient to establish a prima facie violation of the applicable unfair labor practice provision.” § 447.503(1), Fla. Stat. (2008). The pleading requirement is therefore similar to the filing of a civil action, in that it requires a clear and concise statement of the alleged facts, and an identification of the legal basis. It differs, however, insofar as it requires providing sworn statements and documentary evidence.
Once the ULP charge is received by PERC, the statute requires PERC or its designated agent to “review the charge to determine its sufficiency.” Id. § 447.503(2). If the ULP charge is found to be legally sufficient, and there are disputed issues of material fact, then the matter is assigned to a hearing officer, who conducts an evidentiary hearing. Id. § 447.503(5). The hearing officer makes findings of fact, and if requested by PERC, will make recommended conclusions of law. Id. § 447.503(5)(c). The recommended order then goes to PERC to issue a final order. Id. § 447.503(6)(d).
If, however, the designee (in this case the General Counsel) finds the ULP *1096 charge to be legally insufficient, then the General Counsel may issue a summary dismissal of the charge. Id. § 447.503(2)(a). The complaining party has a right to appeal the dismissal to PERC, id., which Mr. Koren did in this case. If the charge was erroneously dismissed, then the charge shall be reinstated. Id.
The important point here is that the General Counsel’s sole role is to determine whether the ULP charge and accompanying documents establish “a prima facie violation of the applicable unfair labor practice provision.” Id. § 447.503(1). The General Counsel’s function is to determine whether the ULP charge facially states a claim and whether there is evidence in the package to support that claim. Cagle v. St. John’s Cnty. Sch. Dist., 939 So.2d 1085, 1089 (Fla. 5th DCA 2006).
Where, as here, the complaining party has appealed the dismissal order to PERC, PERC’s review is de novo. PERC must confine its inquiry to the question whether a prima facie case has been stated and whether the accompanying documentation provides evidence in support of the charge.
III.
Florida case law establishes the elements for proving a prima facie case of retaliation. In Gibbons v. State Pub. Emps. Relations Comm’n, 702 So.2d 536 (Fla. 2d DCA 1997), an employee filed an ULP charge alleging that his employer retaliated against him for union activity by transferring him to an office more than fifty miles away from his present office. Id. at 536. Relying on federal case law, the Second District said:
[PJroof of a prima facie case of retaliation requires a showing that: 1) the plaintiff was engaged in protected activity; 2) the plaintiff was thereafter subjected by his employer to an adverse employment action; and 3) there is a causal link between the protected activity and the adverse employment action.
Id. at 537 (citing Weaver v. Casa Gallardo, Inc., 922 F.2d 1515 (11th Cir.1991) superseded by statute on other grounds, Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340 (11th Cir.2000); see also City of Coral Gables v. Coral Gables Walter F. Stathers Mem’l Lodge 7, 976 So.2d 57, 63-64 (Fla. 3d DCA 2008); Sch. Bd. of Lee Cnty. v. Lee Cnty. Sch. Bd. Emp., 512 So.2d 238, 239 (Fla. 1st DCA 1987); Pasco Cnty. Sch. Bd. v. Fla. Pub. Emp. Relations Comm’n, 353 So.2d 108, 117 (Fla. 1st DCA 1977)).
Thus the first element is that the plaintiff engaged in protected activity and the second element is that the plaintiff was subjected to an adverse employment action. The third element is a requirement for a causal link. As the Gibbons court explained, this only requires the plaintiff to plead that employer was aware of the protected expression when it took the adverse employment action:
[T]he causal link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the ‘causal link’ element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.
Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985). The plaintiff, at a minimum, must establish that the employer was aware of the protected expression when it took the adverse employment action.
Gibbons, 702 So.2d at 537.[6]
*1097 In Gibbons, the court found that the employee had sufficiently alleged an unfair labor practice. He alleged that his union activity was protected activity under Florida labor law; that he was subjected to an adverse employment action because he was transferred to an office more than fifty miles from his current office; and that there was a causal link because his employer was aware of his protected expression when the employer took the adverse employment action. Id. at 587.
PERC had dismissed Gibbons’ ULP charge on the theory that Gibbons “was required to provide affidavits from witnesses who heard Gibbons’ supervisors state their intention to retaliate against him by transferring him to another office.” Id. at 536. The Second District rejected the idea that Gibbons had to provide such witness affidavits. The court concluded that Gibbons’ own sworn statement was sufficient to establish “a prima facie charge and that affidavits proving the employer’s motive were not necessary.” Id.
An unfair labor practice can be proven by circumstantial evidence. Pasco Cnty. Sch. Bd., 353 So.2d at 119. Writing in the context of a claim of retaliation for engaging in union activity, the First District has said:
The timing of the decision by the employer in connection with the employee’s union activity is a proper consideration to a determination whether an unfair labor practice was committed. A discharge of an employee, followed closely on the heels of an employer’s display of anti-union animus, supports a finding of an unfair labor practice.

Id.

Attached to Mr. Koren’s ULP charge are some witness affidavits. To the extent that they contain hearsay, those affidavits may be considered within the following parameters. The Administrative Procedure Act
allows the admission of hearsay at agency hearings when used for the purpose of supplementing or explaining other evidence but precludes its admission if solely used to support a finding unless it would be admissible over objection at civil actions. Thus if hearsay is corroborated by otherwise competent substantial evidence, it is admissible.
Pasco Cnty. Sch. Bd., 353 So.2d at 120 (citation omitted).
One of the retaliatory acts alleged by Mr. Koren is that he was reassigned to another school twenty-four miles away. “Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and ‘should be judged from the perspective of a reasonable person in the plaintiffs position, considering all the circumstances.’ ” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
IV.
Clearly Mr. Koren has stated a prima facie case of retaliation. First, the plaintiff must allege that he was engaged in *1098 protected activity. Gibbons, 702 So.2d at 537. He has done so. Mr. Koran states that he assisted a school security guard, Ms. Morris, in drafting a harassment complaint against the principal, Ms. Leal. Mr. Koren and PERC agree that filing a complaint of discrimination, or assisting someone in filing a complaint of discrimination, is protected activity. Thus, the first element is met.
Second, the plaintiff must allege that he was subjected by his employer to an adverse employment action. Gibbons, 702 So.2d at 537. In determining what constitutes an adverse employment action, Florida courts have followed federal precedent under Title VII of the Civil Rights Act of 1964. The United States Supreme Court has addressed this issue in Burlington, 548 U.S. at 56, 126 S.Ct. 2405. In that case, Ms. White was a forklift operator who complained of sexual harassment by her immediate supervisor, Mr. Joiner. Burlington suspended Joiner. A higher level supervisor told Ms. White about Joiner’s suspension but simultaneously told her that he was removing her from her indoor job as forklift operator and reassigning her to outdoor duty as a track laborer. She filed a retaliation complaint with the Equal Employment Opportunity Commission (“EEOC”). Soon thereafter, there was a disagreement between White and her new immediate supervisor about transportation from one location to another. The new supervisor suspended White without pay for thirty-seven days. After an internal investigation, Burlington reinstated her with back pay. Ms. White filed an additional retaliation complaint regarding the suspension.
The question considered by the Supreme Court was whether these employment actions — transfer and suspension — amounted to forbidden retaliatory actions. The Court said:
The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. As we have explained, the Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation. In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, “which in this context means it well might have ‘dissuaded a reasonable worker from making or supporting a charge of discrimination.’ ”
548 U.S. at 67-68, 126 S.Ct. 2405 (emphasis added). The Court went on to say that petty slights or minor annoyances are not actionable. “We spoke of material adversity because we believe it is important to separate significant from trivial harms.” Id. at 68, 126 S.Ct. 2405.
The Court concluded that the steps taken against Ms. White by Burlington were actionable. As to the job transfer, Burlington had kept Ms. White’s job classification and pay the same, but reassigned her from the indoor job of forklift operator to the outdoor job of track laborer. The evidence supported the proposition that a reasonable employee in the plaintiffs position would view such a transfer as a materially adverse charge in work assignment, because the forklift operator position was objectively considered a better job and the outdoor duties were more arduous and dirtier. Id. at 71, 126 S.Ct. 2405. Thus the transfer was an adverse employment action, even though the job classification and pay stayed the same.
As to the suspension, Burlington argued that it had already taken corrective action. Burlington had suspended Ms. White without pay. Burlington argued that this could not be considered a materially adverse job action because Burlington eventually rein *1099 stated White with back pay. The Court rejected that argument. It held that such action does amount to a materially adverse action if it is done (as the evidence established) for retaliatory purposes. Id. at 72, 126 S.Ct. 2405. Although Ms. White eventually received back pay, the family was without income for thirty-seven days.
Applying Burlington to the present case, Mr. Koren has alleged that three actions were taken against him which, under Burlington, do amount to adverse employment action:
1. False Charge of Job Abandonment. Ms. Leal approved a leave of absence for Mr. Koren on grounds of illness. Soon thereafter, Ms. Leal sent Mr. Koren a letter stating that he had abandoned his job and that failure to respond to her within three days “will result in termination due to job abandonment.”
Based on the allegations of the ULP charge, this amounted to intentional bad faith conduct on the part of Ms. Leal. Ms. Leal approved the leave of absence. Then during the leave of absence which she herself had approved, Ms. Leal accused Mr. Koren of abandoning his position. Assuming that those are the facts, there is no innocent explanation for such conduct.[7]
Under the Burlington test, the question is whether this type of action is one which “well might have ‘dissuaded a reasonable worker from making or supporting a charge of discrimination.’ ” 548 U.S. at 68, 126 S.Ct. 2405. Clearly the answer is yes. As alleged, this was a deliberate threat to remove Mr. Koren from his job. Plainly a threat of discharge might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.
2. False Charge of Misuse of Password. The ULP charge alleges that Ms. Leal initiated a disciplinary proceeding whereby Mr. Koren was charged with violating a regulation regarding computer passwords. Mr. Koren has shown that the text of the regulation states, “Users should not share their passwords with anyone. ...” Mr. Koren alleges that no School Board employee has ever been the subject of a charge of this type, and contends that since the rule says “should not,” not “shall not,” the charge is entirely baseless. He also points out that it is entirely reasonable to provide the password to the department head during the period that he was going to be away on a leave of absence. As alleged, this adverse employment action qualifies as retaliation under the Burlington test.
3.Involuntary Transfer Twenty-Four Miles. The ULP charge alleges that Mr. Koren was transferred to a school twenty-four miles away. As was the case in Burlington, Mr. Koren did not want to be transferred and the transfer imposes additional financial costs on him. He states that the transfer adds 960 miles per month and costs him an additional $200 per month. He also alleged that he and his union have requested an explanation for the transfer and no explanation has been given. The ULP charge sufficiently alleges an adverse job action under Burlington.
The Second District has held that a transfer of over fifty miles qualifies as an adverse employment action. Gibbons, 702 So.2d at 537. Whether analyzed under Burlington or under Gibbons, the transfer qualifies as an adverse employment action.
Third, the plaintiff must allege a causal link between the protected activity and the adverse employment action. Gibbons, 702 So.2d at 537. Mr. Koren has alleged such a causal connection. He states that in the *1100 spring of 2008 Ms. Leal initiated the meeting in her office in which she indicated her belief that Mr. Koren had helped Ms. Morris write her harassment complaint, and interrogated Mr. Koren about that. Clearly Ms. Leal was aware that Mr. Ko-ren had engaged in protected activity, i.e., helping Ms. Morris draft her harassment complaint. Thereafter he was subjected to a succession of adverse job actions. Under Gibbons, it is sufficient to allege that the employer “was aware of the protected expression when it took the adverse employment action.” 702 So.2d at 587. That requirement has been met.
V.
The majority opinion states that Mr. Koren has failed to allege any adverse job action. According to the majority opinion, an adverse job action occurs only if the employee “suffered a loss of wages or benefits, demotion, or similar actions.” For this proposition the majority opinion relies on Graham v. Florida Dept. of Corrections, 1 F.Supp.2d 1445, 1449 (M.D.Fla.1998). The Graham decision does not support the majority opinion.
Graham was decided in 1998. The Graham decision, like the Burlington decision, was a Title VII suit. Ms. Graham had complained that she had been sexually harassed by other employees of the Department of Corrections. After she complained of sexual harassment, the Department transferred Ms. Graham out of her job location, the North Florida Reception Center, and placed her at a nearby institution. Id. at 1449. The federal District Court granted summary judgment on the retaliation claim, because the evidence showed that Ms. Graham wanted to leave the North Florida Reception Center. Id. at 1450. She did not lose any pay or benefits by reason of the transfer, and she did not submit any evidence of any hardship which resulted from the transfer. Id. The denial of relief was based on those facts.
In 2006 (as explained earlier in this opinion), the United States Supreme Court issued its decision in Burlington. That Court clarified and amplified the legal test to be applied in cases of retaliation. The clarified test of Burlington is the test to be applied here. As previously explained, Burlington held that a transfer or a baseless disciplinary action can be the basis for a retaliation claim. Those are the claims that Mr. Koren has made in this case.
Unlike Ms. Graham, Mr. Koren did specifically allege that the transfer to the new location increases his travel time by one hour and twenty minutes daily, amounting to 960 miles per month, and an additional financial cost of $200 per month. To the extent that the majority opinion argues that a transfer cannot be a basis for a retaliation claim, the majority opinion is not only in conflict with Burlington but also in conflict with the Second District opinion in Gibbons, 702 So.2d at 536-37.
The majority opinion also affirms the dismissal order because “there is just not sufficient object of evidence of animus or relation of adverse events to Koren’s participation in a protected activity, necessary to sustain the allegations of unfair labor practices as set forth by statute and case law.” Majority opinion at 1093. Respectfully, this passage seems to say that the plaintiff must produce affidavits of witnesses who may have overheard Ms. Leal say that she was retaliating against Mr. Koren. However, the Gibbons decision states that such affidavits are not required. 702 So.2d at 536. The Gibbons decision correctly holds that the plaintiffs own sworn statement is sufficient support. Here, too, it appears that the majority ruling is in conflict with Gibbons.
As stated in Pasco County School Board, an unfair labor practice may be *1101 proven by circumstantial evidence. 353 So.2d at 119. One of the circumstantial facts which can be considered is the time frame between the protected activity and the subsequent retaliatory behavior.[8]
The time frame here is that in February 2008, Mr. Koren assisted security guard Morris in drafting her complaint. On March 10, Ms. Leal confronted Mr. Koren about his involvement in the complaint. In April, a civil rights compliance investigator interviewed Mr. Koren about the Morris complaint. In the same time period, Ms. Leal snubbed Mr. Koren regarding the Teacher of the Year award.
After the summer break, school reconvened in August 2008. Mr. Koren obtained his leave of absence on September 8. On September 16, Ms. Leal sent the letter accusing Mr. Koren of abandoning his job. On September 29, Ms. Leal sent Mr. Koren a certified letter stating that he was the subject of a formal investigation regarding the computer password. In March 2009, Mr. Koren was transferred to another school. Reading the allegations in the light most favorable to Mr. Koren, a claim of retaliation has been more than sufficiently alleged.[9]
The majority opinion also says that the School District authorized the twenty-four mile transfer “but this is not directly attributable to Leal as actionable retaliation.” Majority opinion at 1092 n. 3. But this reasoning misapprehends the alignment of the parties. The defendant in the ULP action is the School District. Ms. Leal, as Mr. Koren’s supervisor, is the agent of the District. All of the actions are attributable to the School District, which is the employer.
For the stated reasons, the dismissal order should be reversed.

. Although Mr. Koren does not contend that this amounted to a retaliatory job action, he cites it as indicative of animus on the part of Ms. Leal.

. Although not involved here, the statute also prohibits unfair labor practices by a public employee organization, or anyone acting on its behalf, or its officers, representatives, agents, or members. Id. § 447.501(2).

. The Gibbons court went on to explain:
Once the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate, nonre-taliatory reasons for the adverse employment action. If the defendant sets forth such reasons, the burden then shifts back to the plaintiff to raise a genuine factual question as to whether the reasons are mere pretext.
Gibbons, 702 So.2d at 537 n. 3 (citations omitted). This second stage was never reached in this case because the ULP charge was dismissed as being legally insufficient.

. Because this matter comes to us on a dismissal for failure to state a prima facie case, this court (as well as PERC) must assume that the facts stated by Mr. Koren are true.

. In its dismissal order, PERC stated, "After thoroughly reviewing the alleged facts, the General Counsel concluded that the charge relied primarily on the proximate timing of the events, which alone is insufficient to establish a prima facie violation based upon discrimination.” Order, June 8, 2009, at 9. PERC cited several prior PERC decisions and then stated, “We agree with the General Counsel’s conclusion.” To the extent that PERC means that an employee cannot rely on timing of events in order to establish a circumstantial evidence case, PERC’s statement is contrary to the Pasco County School Board case. Pasco County was decided in 1977 and has been much cited since that time. The Second District's decision is authoritative and must be followed by PERC.

. Under the statute, an ULP charge must be based on events which occurred within six months prior to the filing of the charge. § 447.502(6)(b), Fla. Stat. (2008). The ULP charge is timely with regard to the three alleged retaliatory actions in this case.
However, this limitation period does not prevent the employee from relying on events which occurred prior to the six-month period. The employee may "seek to prove that [ULP] charge by evidence of events occurring prior to the six-month period.” Da Costa v. Public Emps. Relations Comm’n, 443 So.2d 1036, 1040 (Fla. 1st DCA 1983).